IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTA YORBOR,                          *

    Plaintiff,                       *

v.                                       *       Civil Action No. GLR-25-817

HARVEST DIRECT, LLC, et al.,             *

    Defendants.                      *

***

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Plaintiff Christa Yorbor's Motion for Default Judgment as to Defendant Harvest Trading Group, Inc. (ECF No. 17). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will deny the Motion.

## I.    BACKGROUND

### A.    **<u>Factual Background</u>**[1]

In either 2021 or 2022, Yorbor's mother purchased and gifted Yorbor a 10-in-1 CopperTech PressurePro 6 Qt Pressure Cooker (the "pressure cooker" or the "Product"). (Am. Compl. ¶¶ 10–11, ECF No. 4). Defendants Harvest Direct, LLC ("Harvest Direct") and Harvest Trading Group, Inc. ("HTG") allegedly were "responsible for the design, manufacture, marketing, testing, warehousing, distribution, supply, and sale" of the

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 4) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

pressure cooker. (Id. ¶ 5; see also Mem. L. Supp. Pl.'s Mot. Default J. ["Mot. Default J."] at 3–4, ECF No. 17).[2] In purchasing and gifting the pressure cooker, Yorbor's mother relied on the product's packaging and the "safety features" touted in Defendants' "As-Seen-On-TV" advertising. (Am. Compl. ¶ 11).

On March 12, 2023, Yorbor used the pressure cooker for the first time to make stew. (Id. ¶ 13). When the pressure cooker indicated that the stew had finished cooking, Yorbor "pressed the pressure release button in accordance with the Product instructions and began to open the lid . . . ." (Id. ¶ 14). The pressure cooker then "exploded," covering Yorbor in "scalding hot food and liquid." (Id. ¶¶ 14–15). As a result, Yorbor sustained "deep partial and full thickness burns to 11% of her total body surface area, including her chest, upper arms, left forearm and neck." (Id. ¶ 17). She was taken by ambulance to the emergency department of Johns Hopkins Bayview Medical Center (the "hospital") in Baltimore, Maryland, and then admitted to the Burn Unit the same day. (Id. ¶¶ 16, 18).

During her ten-day stay at the hospital, Yorbor "underwent surgery for skin debridement and an autograft skin graft," received frequent wound care, and attended occupational therapy sessions. (Id. ¶¶ 18–19). Yorbor was discharged from the hospital on March 22, 2023, but she "continued to receive frequent outpatient treatment" for the next ten weeks and was unable to return to work until June 6, 2023. (Id. ¶¶ 19–20). To this day, Yorbor "continues to suffer from lasting pain, muscle and joint tightness, nerve pain, and a decrease in strength and mobility, necessitating monthly appointments to a pain

---

[2] Unless otherwise noted, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/ECF") system.

management clinic . . . ." (Id. ¶ 21). She also must take pain and nerve damage medication, the latter of which she must take "for the remainder of her life." (Id. ¶ 22).

**B.      Procedural History**

Yorbor filed a Complaint in this Court on March 12, 2025, alleging the following ten counts against Harvest Direct: strict products liability – failure to warn (Count I); strict products liability – defective design and manufacturing defect (Count II); negligence/gross negligence (Count III); negligent failure to warn (Count IV); negligent design and manufacture defect (Count V); negligent misrepresentation and omission (Count IV); fraud (Count VII); breach of express warranty (Count VIII); breach of implied warranty of merchantability and fitness for particular use (Count IX); and violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law ("CL") § 13-303. (Compl. ¶¶ 33–183, ECF No. 1).

Harvest Direct filed a Suggestion of Bankruptcy on May 16, 2025, indicating that it filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code and that, as a result, Yorbor's case against it is stayed automatically until further order of the Bankruptcy Court. (Suggestion Bankr. at 1, ECF No. 3). Yorbor then filed an Amended Complaint on June 27, 2025. (Am. Compl. at 1). The Amended Complaint added HTG—a company that is "responsible for selling, shipping, manufacturing, and warehousing Harvest Direct's products, including the pressure cooker at issue"—as a Defendant. (Id. ¶ 3; Mot. Default J. at 3–4). The Amended Complaint alleged the same ten counts as in the initial Complaint, but against both Defendants, and added a claim of alter ego/enterprise liability against both Defendants. (Am. Compl. ¶¶ 34–199).

HTG did not file a timely response to the Complaint, so on August 13, 2025, Yorbor filed a Motion for Clerk's Entry of Default against HTG. (ECF No. 12). The Clerk issued an Order and Notice of Default against HTG on September 17, 2025. (ECF Nos. 14–15). The Court then ordered Yorbor to file a motion for default judgment or show cause why such a motion would be inappropriate. (ECF No. 16). Yorbor filed the instant Motion for Default Judgment on September 22, 2025. (ECF No. 17). To date, HTG has not responded.

## II. DISCUSSION

### A. **Standard of Review**

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgment. Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). According to Rule 55(b), the court may enter a default judgment against the defendant if, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages. Fed.R.Civ.P. 55(b)(1)–(2). In considering a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780–81 (4th Cir. 2001). But "[l]iability is not deemed established simply because of the default . . . [and] the court, in its discretion, may require some proof of the facts that must be established in order to determine liability." 10A Wright & Miller's Federal Practice and Procedure § 2688.1 (4th ed. 2025); see also Ryan, 253 F.3d at 780–81. "Where a complaint offers only 'labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement,' the Court will

4

not enter default judgment." Joe Hand Promotions, Inc. v. Hill, No. PX-21-557, 2022 WL 5245728, at *2 (D.Md. Oct. 6, 2022) (quoting Balt. Line Handling Co. v. Brophy, 771 F.Supp.2d 531, 545 (D.Md. 2011)).

If the court finds that liability is established, then it must turn to the determination of damages. See Ryan, 253 F.3d at 780–81. "The court must make an independent determination regarding damages and cannot accept as true factual allegation of damages." See Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co., 919 F.Supp.2d 680, 684 (D.Md 2013). Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered because of a party's default. Fed.R.Civ.P. 54(c). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." Adkins v. Teseo, 180 F.Supp.2d 15, 17 (D.D.C. 2001). In doing so, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 12 (1944).

B. **Analysis**

Yorbor has requested a hearing to determine the appropriate damages. (Mot. Default J. at 5). The Court, therefore, limits its analysis to the liability determination. As explained below, the Court finds that Yorbor has not established HTG's liability as to any of her claims.

5

1.    **Products Liability (Counts I, II, IV, and V)**

In Counts I, II, IV, and V of the Amended Complaint, Yorbor alleges that HTG is liable under the strict products liability and negligence theories for (1) failure to warn, (2) design defect, and (3) manufacturing defect. (Am. Compl. ¶¶ 34–70, 91–112).[3] The Court will address each type of alleged defect in turn.

a.    **Failure to Warn**

First, Yorbor alleges strict liability and negligent failure to warn (Counts I and IV). (Am. Compl. ¶¶ 34–51, 91–100). "In a strict liability failure to warn claim, the primary assertion is that a seller failed to provide adequate warnings or instructions about the danger of the product, and that an injury occurred as a result of an undisclosed risk." Quinn v. Gen. Elec. Co., 356 A.3d 2, 10 (Md. 2026). This type of claim "bears a strong resemblance to a claim of negligence," as "[c]oncepts of duty, breach, causation, and damages are present in both." Gourdine v. Crews, 955 A.2d 769, 782 (Md. 2008) (quoting Mazda Motor of Am., Inc. v. Rogowski, 659 A.2d 391, 394 (Md.Ct.Spec.App. 1995)). Thus, to state either a negligent failure to warn or a strict products liability failure to warn claim, the plaintiff must establish: "(1) that the defendant owed a duty to warn; (2) that the defendant breached that duty; (3) there was a direct causal connection between the defendant's failure and the alleged injuries; and (4) that the plaintiff was harmed." Quinn, 356 A.3d at 11.

---

[3] Yorbor alleges design defects and manufacturing defects in the same counts. (See Am. Compl. ¶¶ 52–70, 101–12, ECF No. 4). These claims, however, are governed by separate standards, so the Court will examine them separately.

"A seller has a duty to warn of dangers of a product 'if the item produced has an inherent and hidden danger that the producer knows or should know could be a substantial factor in causing an injury.'" Maryland v. Exxon Mobil Corp., 406 F.Supp.3d 420, 463 (D.Md. 2019) (quoting Shreve v. Sears, Roebuck & Co., 166 F.Supp.2d 378, 413 (D.Md. 2001)). But the seller need not provide "the best of all possible warnings . . . only a reasonable warning." Stanley v. Cent. Garden & Pet Corp., 891 F.Supp.2d 757, 764 (D.Md. 2012). Thus, a plaintiff fails to establish that the defendant breached their duty to warn if the warning provided was "legally adequate." Id. "To decide if a warning is adequate, Maryland courts ask if the benefits of a more detailed warning outweigh the costs of requiring the change" and "whether additional details will undermine the effectiveness of warnings altogether." Id. at 763.

In this case, even if the Court assumes that HTG had a duty to warn Yorbor that the pressure cooker's lid could be opened while it was pressurized, the Court is unable to determine, based on the facts before it, whether the warnings that HTG did provide were "legally adequate." Id. at 764. Yorbor alleges that she opened the lid "in accordance with the Product instructions" and that HTG "failed to provide adequate instructions with the Pressure Cooker and failed to provide any warning of the defective and dangerous design and manufacture and the associated grave risk of harm." (Am. Compl. ¶¶ 14, 25). Yorbor, however, provides no specific facts as to what the instructions did say and whether the pressure cooker was accompanied by any other warnings. Without that information, the Court is unable to determine whether the instructions or warnings were "legally adequate," even in the absence of a specific warning that the lid could be opened while the pressure

cooker was pressurized. <u>Stanley</u>, 891 F.Supp.2d at 764; <u>see, e.g.</u>, <u>Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.</u>, 505 F.Supp.3d 137, 156 (N.D.N.Y. 2020) (applying comparable New York law and denying default judgment as to failure to warn claim because "Plaintiffs fail to allege any specific facts regarding what warnings, if any, <u>were</u> provided with the [product at issue], and why such warnings were inadequate"). The Court, therefore, finds that Yorbor has not established liability as to negligent or strict liability failure to warn (Counts I and IV).

### b.      Design Defect

Second, Yorbor alleges strict liability and negligent design defects (Counts II and V). (Am. Compl. ¶¶ 52–70, 101–12). "A products liability design defect claim 'focuses upon the specifications for the construction of the product and the risks and benefits associated with that design.'" <u>Morris v. Biomet, Inc.</u>, 491 F.Supp.3d 87, 103 (D.Md. 2020) (quoting <u>Shreve</u>, 166 F.Supp.2d at 411). The negligence theory "focuses on the conduct of the defendant," while the strict liability theory focuses primarily on the product. <u>Id.</u> (quoting <u>Parker v. Allentown, Inc.</u>, 891 F.Supp.2d 773, 780 (D.Md. 2012)). Even so, there is "significant overlap" between negligent and strict liability design defect, as the claims "share the 'product litigation[] basics,' i.e., a defect attributable to Defendant and a causal relationship between that defect and Plaintiff's injury." <u>Parker</u>, 891 F.Supp.2d at 790–91 (quoting <u>Laing v. Volkswagen of Am., Inc.</u>, 949 A.2d 26, 39 (Md.Ct.Spec.App. 2008)). Under either theory, proof of a defect "'must arise above surmise, conjecture or speculation.' The right to recovery 'may not rest on any presumption from the happening

of an accident.'" Id. (quoting Virgil v. Kash N' Karry Serv. Corp., 484 A.2d 652, 657 (Md.Ct.Spec.App. 1984)).

Here, Yorbor alleges that the pressure cooker "was designed, manufactured, and distributed in a defective and unreasonably dangerous condition in that the lid could be opened while the cooker was pressurized." (Am. Compl. ¶ 12). Essentially, Yorbor alleges that because she was able to open the lid while the pressure cooker was pressurized, the pressure cooker must have had a design or manufacturing defect. (See id. ¶ 62 (alleging that the pressure cooker "was defective in design and manufacture because it failed to perform as safely as . . . expected")). Such a "presumption from the happening of an accident," however, is not sufficient to establish Yorbor's right to recovery. Parker, 891 F.Supp.2d at 780 (quoting Virgil, 484 A.2d at 657); see, e.g., Guerra v. Steelstone Grp., LLC, No. 22-CV-7191(KAM)(SJB), 2024 WL 2319685, at *7 (E.D.N.Y. May 22, 2024) (applying comparable Texas law and denying default judgment as to strict liability and negligent design and manufacturing defect claims because "Plaintiff's complaint 'does not allege any specific manufacturing or design defect, instead appearing to argue simply that because Plaintiff was able to open the lid while the unit was pressurized, there must have been a manufacturing or design defect'" (quoting Colledge v. Steelstone Grp., LLC, No. 22-CV-2873 (EK)(RER), 2023 WL 5152300, at *5 (E.D.N.Y. June 16, 2023))). The Court, therefore, finds that Yorbor has not established HTG's liability as to negligent or strict liability design defect (Counts II and V).

### c.    Manufacturing Defect

Third, Yorbor alleges strict liability and negligent manufacturing defects (Counts II and V). (Am. Compl. ¶¶ 52–70, 101–12). To state a claim for a manufacturing defect under Maryland law, a plaintiff must allege facts establishing that the product at issue was either not manufactured in accordance with the product's design specifications or that some other error occurred during the manufacturing process. Shreve, 166 F.Supp.2d at 411; see also Phipps v. Gen. Motors Corp., 363 A.2d 955, 959 (Md. 1976) (concluding that a manufacturing defect results when "the defect is a result of an error in the manufacturing process, that is where the product is in a condition not intended by the seller"). Because a manufacturing defect claim focuses on the conduct or procedures involved in the manufacturing process, it is insufficient to simply allege "that the product [was] defective at the time it left the manufacturer's control." Shreve, 166 F.Supp.2d at 411.

The same elements that apply to design defect claims apply to manufacturing defect claims with one distinction: while "[a] design defect claim focuses upon the specifications for the construction of the product and the risks and benefits associated with that design[,] [a] manufacturing defect claim . . . involves an examination of the conduct or procedures involved in the manufacturing and construction of the product." Id.; see also Quinn, 356 A.3d at 10 (citing Restatement (Second) of Torts § 402A).

Here, Yorbor asserts the same allegations for her manufacturing defect claims as for her design defect claims. (See Am. Compl. ¶¶ 52–70, 101–12). Regarding the required showing of a defect in the manufacturing process, Yorbor alleges that "[u]pon reasonable information and belief, prior to selling the Pressure Cooker, Defendants did not conduct a

hazard or risk analysis and did not conduct adequate testing and investigation to determine whether the Product presented an unreasonable risk of harm during expected and foreseeable use of the Product." (Id. ¶ 24; see also id. ¶ 64 (alleging that Defendants are strictly liable for "failing to use ordinary care in testing the product")). But "[a]n allegation made 'on information and belief' does not serve as a reliable foundation upon which to predicate a final judgment," especially when, as here, there are no facts to support the allegation. Zuffa, LLC v. Ferrell, No. PX-20-273, 2021 WL 2315458, at *4 n.4 (D.Md. June 7, 2021) (quoting Brophy, 771 F.Supp.2d at 543); see, e.g., Oceanic Trading Corp. v. Vessel Diana, 423 F.2d 1, 4–5 (2d Cir. 1970) (vacating default judgment that was based on factual assertions made "on information and belief"). Consequently, Yorbor has not established HTG's liability as to negligent or strict liability manufacturing defect (Counts II and V).

### 2. Negligence & Gross Negligence (Count III)

In Count III of the Amended Complaint, Yorbor brings claims of negligence and gross negligence against Defendants. (Am. Compl. ¶¶ 71–90). As to negligence, a plaintiff must prove that: (1) the defendant was under a duty to protect plaintiff from injury; (2) the defendant breached that duty; (3) plaintiff suffered actual injury or loss; and (4) the injury or loss proximately resulted from defendant's breach of duty. 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co., 60 A.3d 1, 10 (Md. 2013). Yorbor's allegations in her negligence claim mirror those in her negligent manufacturing defect claim, as she argues that Defendants "breached their duty to exercise reasonable and prudent care in the sale and distribution of the Product by failing to perform reasonable and adequate testing of the

11

Product to investigate the Product's propensity for pressurized lid detachments." (Am. Compl. ¶ 79). But, again, the underlying allegation that HTG did not conduct adequate testing before selling the pressure cooker is made "[u]pon reasonable information and belief," (id. ¶ 24), and "allegation[s] made 'on information and belief' do[] not serve as a reliable foundation upon which to predicate a final judgment," Ferrell, 2021 WL 2315458, at *4 n.4. Yorbor, therefore, has not pleaded sufficient facts to establish HTG's liability as to negligence (Count III).

Yorbor also alleges gross negligence in Count III. (Am. Compl. at 12). In Maryland, "[g]ross negligence is an intentional failure to perform a manifest duty in reckless disregard for the consequences as affecting the life or property of another." Muscente v. Jolly Roger Rides, Inc., No. ABA-24-2304, 2025 WL 2257622, at *2 (D.Md. Aug. 7, 2025) (quoting Barbre v. Pope, 935 A.2d 699, 717 (Md. 2007)). It applies "only when [the defendant] inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." Id. (quoting Stracke v. Est. of Butler, 214 A.3d 561, 569 (Md. 2019)). To state a claim of gross negligence, the plaintiff must plead facts that "if true, would constitute 'a wanton or reckless disregard for human life.'" Id. (quoting State v. Kramer, 569 A.2d 674, 681 (Md. 1990)). "Only conduct that is of extraordinary or outrageous character will be sufficient to imply this state of mind." Stracke, 214 A.3d at 569 (quoting Thomas v. State, 186 A.3d 857, 863 (Md.Ct.Spec.App. 2018), rev'd on other grounds, State v. Thomas, 211 A.3d 254 (Md. 2019)).

Here, Yorbor alleges that Defendants had "inherent knowledge and awareness of the risk of pressurized lid detachments and its propensity to cause burns and other debilitating and long-term injuries" such that "Defendants' failure to ensure that the Product was safe and effective constitutes gross negligence, malice, and a reckless disregard for the safety of Plaintiff and others." (Am. Compl. ¶ 78). She intends to seek exemplary damages because "the acts and omissions of Defendants, whether taken singularly or in combination with others, constitutes actual malice and gross negligence that proximately caused Plaintiff's injuries." (Id. ¶ 89). As stated above, however, Yorbor has not alleged sufficient facts to find that HTG acted negligently, let alone with "reckless disregard for human life," in the design or manufacturing of the pressure cooker. Muscente, 2025 WL 2257622, at *2 (quoting Kramer, 569 A.2d at 681). Yorbor has not alleged sufficient facts showing that either a design defect or manufacturing defect occurred and, therefore, has not alleged sufficient facts demonstrating that HTG "made a deliberate and conscious choice" not to fix any alleged design defect or not to adequately test the pressure cooker before selling it. Stracke, 214 A.3d at 569. As such, Yorbor has not established HTG's liability as to gross negligence (Count III).

### 3.    Negligent Misrepresentation or Omission (Count VI)

In Count VI of the Amended Complaint, Yorbor alleges negligent misrepresentation or omission against Defendants. (Am. Compl. ¶¶ 113–27). In Maryland, a claim for negligent misrepresentation contains five elements:

> (1) "the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;" (2) "the defendant intends that his statement will be acted upon by the plaintiff;"

(3) "the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;" (4) "the plaintiff, justifiably, takes action in reliance on the statement; and" (5) "the plaintiff suffers damage proximately caused by the defendant's negligence."

Hunter v. Abbott Lab'ys, Inc., No. BAH-25-1544, 2026 WL 479085, at *11 (D.Md. Feb. 20, 2026) (quoting Kramer v. Ethicon, Inc., GLR-20-3747, 2021 WL 6135206, at *9 (D.Md. Dec. 28, 2021)). As to any alleged negligent omissions, the Maryland Supreme Court has not "specifically recogniz[ed] a claim for negligent omission of fact, [but] the court has countenanced such a cause of action, stating that 'if a party to a transaction is under a duty to speak, the failure to speak may, under appropriate circumstances . . . , constitute a representation.'" Id. at *12 (quoting Dunhem v. SunTrust Banks, Inc., No. AW-04-1016, 2006 WL 8457036, at *6 (D.Md. Mar. 23, 2006)).

Here, Yorbor alleges that Defendants "had a duty to accurately and truthfully represent to the public, individuals, consumers, and end users, including Plaintiff, the known risks of the Product and its propensity for pressurized lid detachments." (Am. Compl. ¶ 117). She states that Defendants provided consumers "with false or incorrect information, and/or omitted or failed to disclose material information . . . regarding the safety and known risks of the Product"; "omitted any instruction regarding the safety measures that should be taken to protect against pressurized lid detachments"; and misrepresented the pressure cooker as "safe." (Id. ¶¶ 114, 118–19). She alleges that Defendants' intent in making these alleged misrepresentations was "to falsely assure [consumers] of the quality of the Product and induce [consumers] to request, recommend, purchase, and use the Product." (Id. ¶ 116). She further states that she relied on the alleged

14

misrepresentations in deciding to use the pressure cooker and that she would not have used it had Defendants not made the alleged misrepresentations and omissions. (Id. ¶¶ 120–21, 124). Finally, Yorbor alleges that her "reliance on the [alleged] misrepresentations and omissions was the direct and proximate result of [her] injuries." (Id. ¶ 125).

These allegations are insufficient to establish HTG's liability for negligent misrepresentation, mainly because Yorbor does not specify who made the alleged misrepresentations. See Davenport v. Anne Arundel Cnty. Bd. of Educ., No. GLR-12-1335, 2012 WL 6043641, at *9 (D.Md. Dec. 4, 2012) (dismissing negligent misrepresentation claim because plaintiff did not specify who made the alleged misrepresentations and because some of the alleged misrepresentations were merely implied). Yorbor also does not provide the exact statements that she challenges as negligent misrepresentations, providing only general references to "safety features" apparently discussed in an advertisement and representations on the pressure cooker's packaging that the pressure cooker was "safe." (Am. Compl. ¶¶ 11, 119, 130, 141). Arguably, Defendants' alleged references to "safety features" or general "safety" without discussing the alleged "propensity" for pressurized lid detachments could constitute negligent omissions, to the extent such a cause of action is recognized under Maryland law. See Hunter, 2026 WL 479085, at *12 (stating that "[n]egligent omission occurs where a defendant represents only 'half of the relevant picture without disclosing the remaining facts'" (quoting Dunhem, 2006 WL 8457036, at *6)). But, even then, Yorbor runs into the same lack of specificity as to the alleged speaker. See Davenport, 2012 WL 6043641, at *9. Yorbor, therefore, has failed to establish HTG's liability as to negligent misrepresentation (Count VI).

15

### 4.      Fraud (Count VII)

In Count VII of the Amended Complaint, Yorbor alleges fraud against Defendants. (Am. Compl. ¶¶ 128–37). The elements of common law fraud in Maryland are:

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

Brooks v. Mortg. Invs. Corp., No. WDQ-13-1566, 2014 WL 105477, at *5 (D.Md. Jan. 8, 2014) (quoting Hoffman v. Stamper, 867 A.2d 276, 292 (Md. 2005)). Additionally, allegations of fraud implicate the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). Cozzarelli v. Inspire Pharms. Inc., 549 F.3d 618, 629 (4th Cir. 2008). Rule 9(b) states that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed.R.Civ.P. 9(b). Under Rule 9(b), a plaintiff alleging claims that sound in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731 (4th Cir. 2010) (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)). In other words, "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." Crest Constr. II, Inc.

v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (quoting Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011)).

Here, Yorbor alleges that Defendants "fraudulently mispresented the use of the Product as 'safe'" in their "As-Seen-On-TV" advertising and on the pressure cooker's packaging, (Am. Compl. ¶¶ 11, 130), but Yorbor does not allege the time that Defendants made these alleged misrepresentations as required under Rule 9(b). It is also not clear who made these representations, as Yorbor lumps Defendants together when making these allegations. (See id.); see, e.g., Giannaris v. Cheng, 219 F.Supp.2d 687, 694–95 (D.Md. 2002) (finding that plaintiff did not satisfy Rule 9(b) pleading requirements in part because plaintiff "failed to specify which Defendant made which statements"); Belvin v. Sedgewood Manor Health Care Ctr., LLC, No. 3:21-CV-02169-JMC, 2022 WL 845817, at *3 (D.S.C. Mar. 22, 2022) ("General allegations that fail to identify a specific individual's specific conduct or statements do not fulfill the heightened particularity standard for pleading fraud under Rule 9(b)."). Moreover, notwithstanding Rule 9(b), Yorbor alleges that "Defendants made the [alleged] misrepresentations and omissions for the purpose of deceiving and defrauding consumers," (Am. Compl. ¶ 132), but she provides no factual support for this legal conclusion, see Brophy, 771 F.Supp.2d at 540 ("The party in default is not held to admit conclusions of law or allegations regarding liability that are not well-pleaded." (citation modified)). Yorbor, therefore, fails to establish HTG's liability as to fraud (Count VII).

17

### 5.    Breach of Express & Implied Warranties (Counts VIII and IX)

In Counts VIII and IX of the Amended Complaint, Yorbor alleges breach of express and implied warranties. (Am. Compl. ¶¶ 138–65). Starting with Yorbor's claim that Defendants breached the implied warranty of merchantability (Count IX), "[a] warranty of merchantability is implied in any contract for the sale of goods 'if the seller is a merchant with respect to goods of that kind.'" Morris, 491 F.Supp.3d at 106 (quoting CL § 2-314(1)). To prove an implied warranty of merchantability claim, "a plaintiff must show that the product was not fit for its intended purpose." Shreve, 166 F.Supp.2d at 421 (citing CL § 2-314(c)). Like design defect claims, breach of implied warranty requires proof of a defect, attribution to the seller, and a causal relationship between the defect and the injury. Id. Additionally, "[t]he Uniform Commercial Code adopted in Maryland requires a buyer to give notice to the seller for a breach of implied warranty." Morris, 491 F.Supp.3d at 106 (quoting Doll v. Ford Motor Co., 814 F.Supp.2d 526, 542 (D.Md. 2011)). Notably, the buyer must "inform the seller of the breach, the particular goods that have been impaired, and set forth the nature of the nonconformity." Doll, 814 F.Supp.2d at 542. "[A] notification to a seller within a reasonable time is a 'prerequisite' for claiming a breach of implied warranty." Id. In Maryland, "a lawsuit cannot constitute notice of a breach." Morris, 491 F.Supp.2d at 106 (quoting Stanley, 891 F.Supp.2d at 772).

To the extent that Yorbor alleges a breach of an implied warranty of fitness for a particular use, (see Am. Compl. at 24–27), such a claim does not require a showing of a defect but does "require that 'the buyer have a particular purpose and that the seller have reason to know of that particular purpose.'" Hunter, 2026 WL 479085, at *16 (quoting

18

Montgomery v. CSX Transp., Inc., No. SAG-14-1520, 2015 WL 770470, at *5 (D.Md. Feb. 20, 2015)).

Here, Yorbor does not allege that she notified either Defendant of the alleged defect in the pressure cooker and, therefore, has not established liability as to breach of an implied warranty of merchantability (Count IX). Yorbor also does not allege that she intended to use the pressure cooker for a particular purpose that is "peculiar to [her]" or that HTG knew of any such particular purpose. Id. (explaining that "the particular purpose 'must be distinguishable from the normal use of the goods'" and "peculiar to the buyer" (quoting Ford Motor Co. v. Gen. Acc. Ins. Co., 779 A.2d 362, 375 (Md. 2001))). As a result, Yorbor also fails to establish HTG's liability as to breach of an implied warranty of fitness for a particular use (Count IX).

Regarding Yorbor's claim that Defendants breached an express warranty, (Am. Compl. ¶¶ 138–48), she must "establish that 1) a warranty existed, 2) the product did not conform to the warranty, and 3) the breach proximately caused the injury or damage," BnP Ventures, LLC v. G-Force Sportfishing, Inc., 499 F.Supp.3d 175, 181 (D.Md. 2020) (quoting Palmer v. CVS Health, No. CCB-17-938, 2019 WL 6529163, at *6 (D.Md. 2019)). In doing so, she "must set forth the 'terms and conditions of a warranty.' In other words, [she] must allege 'at some basic level what was warranted and how the defendant's product failed to perform as warranted.'" Harden v. Budget Rent A Car Sys., Inc., 726 F.Supp.3d 415, 433 (D.Md. 2024) (quoting Moczulski v. Ferring Pharms., Inc., No. JKB-18-1094, 2018 WL 3496433, at *5 (D.Md. July 20, 2018)).

19

A seller can create an express warranty in any of the following ways:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Morris, 491 F.Supp.3d at 107 (quoting CL § 2-313(1)). "[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Id. (quoting CL § 2-313(2)). A seller does not need to have the specific intention to create a warranty as long as a representation:

> is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.

Id. (quoting CL § 2-313 cmt. 3).

Here, Yorbor alleges that "Defendants, through their advertising, marketing, packaging, and labeling, expressly warranted that the Pressure Cooker was safe and fit for the purposes intended, that it was of merchantable quality, and that it did not pose dangerous health risks." (Am. Compl. ¶ 141). But Yorbor "obviously bought the [pressure

20

cooker] expecting that it would work appropriately and safely for its intended purposes . . . . It is more sensible to regard [her] expectation that the [pressure cooker] would work appropriately . . . a[s] part of the implied warranty of merchantability" rather than an express warranty. Shreve, 166 F.Supp.2d at 420. And, as stated above, Yorbor has not established HTG's liability as to breach of an implied warranty of merchantability.

Yorbor also alleges specifically that her "mother relied upon the 'safety features' relayed on Defendants' 'As-Seen-On-TV' programming, as well as the Product packaging," before buying the pressure cooker. (Am. Compl. ¶ 11). But Yorbor does not allege what "safety features" Defendants allegedly touted in their advertisements or what warranties Defendants included on the packaging. Yorbor also does not explain how the pressure cooker did not conform to the alleged warranty. That is, it is unclear whether the safety features mentioned in Defendants' advertisement included a steam release valve, lid-locking mechanism, or other feature specific to preventing a pressurized lid detachment—features that Yorbor states "[s]afer alternatives" have, (id. ¶ 108)—or that any of those features did not perform as warranted. Contra Rife v. Newell Brands, Inc., 632 F.Supp.3d 1276, 1299 (S.D.Fla. 2022) (applying comparable Florida law and finding that plaintiff adequately stated claim for breach of express warranty where plaintiffs "filled the Complaint with 'descriptions of the goods' that (they say) formed the 'basis of the bargain," including that "Defendants labeled and marketed their new Pressure Cooker as 'TRUSTED,' proclaiming that the Product 'features a locking, air-tight lid that stays sealed under pressure for total peace-of-mind'" (quoting Fla. Stat. § 672.313(1))). Yorbor, therefore, has not sufficiently alleged "what was warranted and how the [pressure cooker]

21

failed to perform as warranted.'" <u>Harden</u>, 726 F.Supp.3d at 433 (quoting <u>Moczulski</u>, 2018 WL 3496433, at \*5). Thus, Yorbor has not established HTG's liability as to breach of an express warranty (Count VIII).

### 6.    Violation of Maryland Consumer Protection Act (Count X)

In Count X of the Amended Complaint, Yorbor alleges that Defendants violated the MCPA. (Am. Compl. ¶¶ 166–84). The MCPA generally prohibits unfair, abusive, or deceptive trade practices in, among other things, "[t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services . . . [t]he offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services," and other activities that do not apply to this case. CL § 13-303. Unfair, abusive, or deceptive trade practices include, but are not limited to:

> (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
> (2) Representation that: . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; [and]
> (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) [t]he promotion or sale of any consumer goods, consumer realty, or consumer service . . . .

CL §§ 13-301(1), (2)(iv), (9)(i). A plaintiff can "bring an action to recover for injury or loss sustained by [her] as a result of a practice prohibited by" the MCPA. CL § 13-408(a). To state a claim under the MCPA, a plaintiff must allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [her] actual injury." <u>Mohamed</u>

v. Bank of Am., N.A., 771 F.Supp.3d 695, 707 (D.Md. 2025) (quoting Daniyan v. Viridian Energy LLC, No. GLR-14-2715, 2015 WL 4031752, at *1 (D.Md. June 30, 2015)). Additionally, "claims that allege 'false statements, deceptive actions, misrepresentations, [or] omissions,' including claims brought under the MCPA, sound in fraud and are accordingly subject to the heightened pleading requirements of Rule 9(b)." Id. (quoting Haley v. Corcoran, 659 F.Supp.2d 714, 724 n.10 (D.Md. 2009)).

Here, Yorbor alleges that "Defendants made affirmative misrepresentations that . . . the Product was safe and suitable for cooking . . . [,] concealed and suppressed material facts concerning" the pressure cooker's alleged "propensity for pressurized lid detachments," and that Defendants' alleged misrepresentations "were likely to, and did in fact, deceive reasonable consumers . . . ." (Am. Compl. ¶¶ 170, 177). These allegations "sound in fraud" and must satisfy Rule 9(b)'s heightened pleading requirements. Mohamed, 771 F.Supp.3d at 707. As with her fraud claim, however, Yorbor has not alleged the time that these alleged misrepresentations were made, and it is unclear who made the statements. See Giannaris, 219 F.Supp.2d at 694–95; Belvin, 2022 WL 845817, at *3. Yorbor, therefore, has not established HTG's liability under the MCPA (Count X).

### 7.    Alter Ego/Enterprise Liability (Count XI)

Finally, in Count XI of the Amended Complaint, Yorbor seeks to hold Defendants' principals, James P. Lewis, John T. Lewis Jr., and Timothy S. Kensinger, individually and personally liable under the alter ego doctrine. (Am. Compl. ¶¶ 185–99). Under the alter ego doctrine, the Court will "pierc[e] the corporate veil" and hold individual shareholders or officers liable for the corporation's wrongdoings when "the corporate entity has been

23

used as a subterfuge and to observe it would work an injustice . . . ." Hildreth v. Tidewater Equip. Co., 838 A.2d 1204, 1210 (Md. 2003) (quoting 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.10 at 574–76 (1999 Rev. Vol.)). Maryland courts apply the alter ego doctrine only in "exceptional circumstances" when a plaintiff shows:

> (1) complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own, (2) that such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights, and (3) that such control and breach of duty proximately caused the injury or unjust loss.

Roley v. Nat'l Pro. Exch., Inc., 474 F.Supp.3d 708, 726 (D.Md. 2020) (quoting Hildreth, 838 A.2d at 1210), aff'd, 860 F.App'x 264 (4th Cir. 2021). Some factors that courts commonly consider when applying the alter ego doctrine are:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records.

Id. (quoting Hildreth, 838 A.2d at 1210).

Here, Yorbor alleges that Defendants share the same "principals, . . . assets, finances, office space, and documentation"; that the principals "disregarded the proper formalities of a corporation"; and that the principals "had complete domination of the finances, policies, and business practices such that [Defendants] did not have separate

24

minds, will or existence of their own." (Am. Compl. ¶¶ 188, 190–91). Yorbor also alleges that HTG and the three principals have all stated claims as creditors against Harvest Direct in its bankruptcy proceedings. (Id. ¶¶ 194–97). Additionally, Yorbor states that "Defendants are inadequately capitalized, and the principals failed to observe corporate formalities, operating without a profit, operating while insolvent, and commingling corporate and personal assets." (Id. ¶ 198).

Yorbor's allegations essentially are a recitation of the relevant factors and, other than the creditor claims against Harvest Direct,[4] she provides no factual support for these allegations. Considering the lack of factual support and "Maryland courts' strong reluctance" to pierce the corporate veil "except in the most obvious cases of fraud," Brophy, 771 F.Supp.2d at 553, which, as stated above, is not the case here, the Court finds that Yorbor has not pleaded sufficient facts to hold Defendants' principals liable under the alter ego doctrine (Count XI).

---

[4] Yorbor references Harvest Direct's voluntary bankruptcy petition in the Amended Complaint as Exhibit A, but there are no exhibits attached to the Amended Complaint. (Am. Compl. ¶¶ 193–97). Yorbor does include a portion of the petition with the Notice of Suggestion of Bankruptcy, (ECF No. 3-2), but not the portion that discusses creditor claims. The Court, however, may take judicial notice of the petition as part of the public record. See United States ex rel. Lesnik v. Eisenmann SE, No. 16-CV-01120-LHK, 2021 WL 4243399, at *3 (N.D.Cal. Sep. 17, 2021) (taking judicial notice of complaint filed in another court in considering motion for default judgment), aff'd sub nom., United States ex rel. Lesnik v. ISM Vuzem d.o.o., 112 F.4th 816 (9th Cir. 2024). Harvest Direct's petition confirms that HTG and the three principals are creditors in Harvest Direct's bankruptcy proceedings. See Vol. Bankr. Pet. at 12–13, In re Harvest Direct, LLC, No. 1:25bk10987 (Bankr.D.Mass. May 14, 2025) (ECF. No. 1).

### III.    CONCLUSION

For the foregoing reasons, the Court will deny Yorbor's Motion for Default Judgment (ECF No. 17). That said, the Court will grant Yorbor fourteen days to file a Second Amended Complaint to cure the pleading deficiencies, if possible. A separate Order follows.

Entered this 29th day of July, 2026.

                                             /s/
                                  George L. Russell, III
                                  Chief United States District Judge

26